

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br>Maren L. Carmona<br>Debtor. | Case No. LA 05-22992 TD<br><br>Chapter 7<br><br>MEMORANDUM OF DECISION |

The following are my findings of fact and conclusions of law in response to the motion of the Chapter 7 Trustee for reconsideration (Motion) of my order entered November 14, 2005, dismissing this bankruptcy case on the Debtor's motion while denying fees and costs sought by the Trustee and her attorneys.

## INTRODUCTION

The Debtor, is a widow, her husband having passed away in 2002. The Debtor and her deceased husband have a 14-year old daughter. Prior to his death, the Debtor's husband conveyed his interest in the family residence in trust to their daughter. The trust is not subject to the Debtor's control. The Debtor and her daughter live in the family residence, worth, it is estimated, somewhere between $400,000 and $530,000, subject to a 2004 mortgage with a $93,787 balance.

1   On March 24, 2005, the Debtor was diagnosed with stage IV colon cancer, with liver metastasis. Her illness precipitated her chapter 7 bankruptcy petition filed on June 3, 2005 (coincidentally, with the help of an attorney who charged only $100 for his services). In her bankruptcy papers, the Debtor said that: (1) she owned a 50% undivided interest in the family residence as a tenant in common; (2) she valued her interest at $200,000; (3) she claimed a $150,000 homestead exemption; (4) she owed World Savings $93,787 on the 2004 mortgage; (5) she had no co-debtors; and (6) her gross income was $1,743 per month, consisting of pension and disability payments.

Within about three months of her bankruptcy filing, the Debtor's sister paid all prepetition unsecured creditors in full, about $28,000, and the Trustee was given notice of that fact on September 9, 2005, when the Debtor served her motion to dismiss this case.

Meanwhile, on August 3, 2005, the Trustee had filed and served her application to employ counsel, primarily to assist the Trustee to sell the Debtor's family residence, including the interest of the Debtor's daughter, in order to pay creditors. The Debtor did not oppose the employment application or ask for a hearing, and I approved the Trustee's application by an order entered September 7, 2005.

At the time of the hearing on the Debtor's motion to dismiss her bankruptcy case, the Trustee did not challenge any statement in the Debtor's bankruptcy papers or in her motion to dismiss except the Debtor's $200,000 valuation of her interest in the family residence, but the Trustee sought payment of her fees and the fees of her counsel as a condition to dismissal of the case.

The Trustee had engaged her lawyers' services informally on July 8 to assist with the sale of the Debtor's residence. The Trustee's counsel went to work immediately, four weeks before an employment application was served and filed. Among other things, the attorneys prepared, filed, and served the Trustee's adversary

2

complaint against the Debtor and her daughter's trust before serving and filing the Trustee's application to employ counsel. Total fees and costs sought by the Trustee were $1,820 for her services and $6,075.12 for the fees and costs of her counsel.

I granted the Debtor's motion to dismiss but denied payment of fees and costs to the Trustee and her counsel because I concluded from the record that the Debtor's residence should not have been administered. I also concluded that the Trustee's request for fees and costs for herself and for her counsel was unreasonable under the circumstances based on my assessment of the evidence and the law. The Trustee moved timely for reconsideration of my order. The Trustee urges that there was sufficient equity in the Debtor's family residence to justify the Trustee's administration and, thus, that the fees and costs incurred were proper and should be paid.

## DISCUSSION

### When Should Reasonable Compensation and Expenses Be Awarded?

The Trustee is entitled to reasonable compensation for her services limited by § 326(a) of the Bankruptcy Code[1] to a percentage of "moneys disbursed . . . by the trustee to parties in interest . . . ." Section 330(a)(1) accords me the discretion to award "reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary expenses" to a trustee or a professional she or he may employ under § 327. In determining reasonable compensation, § 330(a)(3)(C) says that I should take into account, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title . . . ." On the other hand, § 330(a)(4) states that ". . . the court shall not allow compensation for . . . (ii) services that were not-- (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration

---

[1] All section references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1330, unless otherwise specifically noted.

of the case." The Bankruptcy Appellate Panel for the Ninth Circuit has interpreted this to require only that the services were "reasonably likely" to benefit the estate at the time the services were rendered but does not require proof of an actual material benefit to the estate from the services rendered. In re Mednet, 251 B.R. 103, 108 (9th Cir. BAP 2000). However, the Panel pointed out that a professional must exercise reasonable billing judgment and that after a cost benefit analysis when it is determined that the only parties who likely would benefit are the trustee and his or her professionals, "the service is unwarranted and a court does not abuse its discretion in denying fees for those services." Id. at 108-09 (quoting In re Riverside-Linden Investment Co., 925 F.2d 320, 321 (9th Cir. 1991)).

**What does a cost benefit analysis show here?**

In my judgment, the question presented here is whether the Trustee and her attorneys exercised reasonable billing judgment when considering whether to incur expenses for services in either selling the Debtor's family residence or resisting the Debtor's efforts to have her bankruptcy case dismissed under the particular circumstances of this case, including the following facts established by the evidence: (1) the Debtor's prepetition debts had been paid just three months into the case and almost simultaneously with the Trustee's employment of counsel; (2) overall, the Debtor and her daughter, by the Trustee's estimate, had a pre-sale paper equity in their home of at least $435,000 based on the Trustee's estimate of value, subject to a relatively modest mortgage; (3) the Debtor was solely liable for the mortgage; and (4) the Debtor apparently was keeping up with her obligations on the mortgage since my review of the case docket reflects the fact that no relief from stay motion was filed by her lender.

The Trustee set her sights on a sale of the residence apparently based on a broker's informal $530,000 valuation of the residence and pursuant to § 363(h).

Section 363(h) accords a trustee the right to sell an "estate's interest" in property along with "the interest of any co-owner." At the same time, § 364(h) also explicitly allows the trustee to sell "**only if** . . . the benefit to the estate of a sale free of the interests of co-owners outweighs the detriment, if any, to such co-owners . . . ." (Emphasis added.) Here, it seems to me that the detriment to the Debtor's 14-year old co-owner was both substantial and obvious from the record at the time the Debtor served her motion to dismiss the case on the Trustee. That detriment clearly outweighed any benefit that the estate might have realized by the forced sale of the Debtor's home. In fact, in this case, the evidence demonstrates that the only entities who might benefit from the sale were the Trustee, her lawyers, and her real estate broker.

The Trustee, in her Motion, takes a narrow, technical but straightforward view of the situation. In addition to Bankruptcy Code § 363(h), she cites California Code of Civil Procedure (CCP) § 873.820 as a further statutory basis to support her position. Section 873.820 states:

> The proceeds of sale for any property sold shall be applied in the following order:
>
> (a) Payment of the expenses of sale.
>
> (b) Payment of the other costs of partition in whole or in part or to secure any cost of partition later allowed.
>
> (c) Payment of any liens on the property in their order of priority except liens which under the terms of sale are to remain on the property.
>
> (d) Distribution of the residue among the parties in proportion to their shares as determined by the court.

CCP § 873.820.

In discussing distribution of sale proceeds in a Bankruptcy Code § 522(f) context, the Ninth Circuit BAP has recognized that CCP § 873.820 applies "once a residence has been sold pursuant to partition . . . [to provide] . . . a defined order of

distribution of sale proceeds." In re Nielsen, 197 B.R. 665, 671 (9th Cir. BAP 1996). At first blush, the Nielsen decision might seem to support the Trustee's Motion. However, there are factors to consider here that were not addressed in Nielsen. For example, in the case now before me, (1) there has been no sale; (2) we have conflicting estimates of value; (3) the Trustee' argument omits mention of other applicable California statutes; and, finally, (4) we must remember that we are not concerned here with what to do with the proceeds after a sale but, rather, with the question of whether the Trustee exercised reasonable billing judgment as required by Mednet, 251 B.R. at 108-09, or whether the Trustee overlooked § 330(a)(4) when she elected to incur legal charges as early as she did and to resist the Debtor's motion to dismiss her bankruptcy case.

In examining the reasonableness of the Trustee's billing judgment, I believe there were important factors here that the Trustee should have given more weight to. For example, (1) the Debtor's prepetition unsecured creditors had been paid in full; (2) the Debtor's family situation was critical and unusual; (3) the Debtor's financial and medical circumstances were complicated by her lack of financial liquidity or options; and (4) the Debtor and daughter had a very sizable equity in the home (regardless of conflicting estimates of value).

Perhaps even more importantly, Title 10.5 of the California Code of Civil Procedure (where CCP § 873.820 is found) is lengthy and includes several provisions in addition to CCP § 873.820 that I believe may be relevant here and that deserve consideration. Other statutes that I believe the Trustee should have considered include CCP §§ 872.140 and 873.250(a). For example, § 872.140 provides: "The court may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties [that is, between the Debtor's bankruptcy estate and the Debtor's co-tenant, her minor daughter's trust] according to the

principles of equity." Section 873.250(a) provides: "Where division [of property] cannot be made equally among the parties according to their interests without prejudice to the rights of some, compensation may be required to be made by one party to another to correct the inequality." I believe that CCP §§ 872.140 and 873.250(a), as well as CCP §§ 873.820(b) and (d), may be integral to the issue of partition of the Debtor's family residence and applicable to my decision in this matter.

**The Trustee's Position Does Not Reflect Either the Evidence or the Subjective Realities of This Case**

With all due respect to the Trustee and her counsel, and recognizing their concern for their fiduciary obligations and prompt, efficient, cost effective administration of the estate, it would seem from the record that there was an unnecessary rush to sell the Debtor's residence in spite of virtually simultaneous efforts on the part of the Debtor to pay her prepetition unsecured creditors. In that rush, I believe the Trustee may have overlooked important personal implications facing the Debtor and her co-tenant, the Debtor's minor daughter, and their efforts to save their home, namely, (1) a seriously ill widow and a fatherless minor; (2) serious (and ultimately satisfactory) efforts by the widow to pay her bills and protect her and her daughter's interests in the family residence; and (3) all the other financial details outlined in the Debtor's June 2005 bankruptcy and motion papers, all of which strongly support the Debtor's motion to dismiss her bankruptcy case without further unnecessary costs. The evidence leads me to the conclusion that consideration for the Debtor's circumstances and efforts should have taken precedence over the Trustee's efforts to sell the residence. I believe "reasonable billing judgment" should have been exercised in favor of the Debtor's program rather than the program pursued by the Trustee and her counsel, in my humble opinion, though I appreciate that the Trustee was trying to do her job.

Having said that, it is necessary to recognize that we have nothing to go on but estimates of value, $200,000 by the Debtor (for the value of her one-half interest) and $530,000 gross by the Trustee, for the total value of the residence. The Trustee's estimate was based on her real estate broker's drive by appraisal supported only by a property profile (that is not part of the evidence) and the broker's statement (also undocumented) that he considered comparable sales, which I infer means sales of real property that he concluded were more or less comparable to the Debtor's residence.

The Trustee spoke to her broker and received his $530,000 valuation before employing counsel.[2] Based on that valuation, the Trustee computed equity as follows:

| | |
|---|---|
| Fair Market Value | $530,000 |
| Less Lien | < $94,000 > |
| Less Costs of Sale (8%) | < $42,400 > |
| Divided by Debtor's 50% Interest | ÷ 2 |
| Estate's Interest in Property | $196,000 [sic] |
| Less Debtor's Exemption | <$150,000> |
| Net to Estate | $46,800 |

At the line "Net to Estate" there appears to be significant equity for the Trustee to administer. This is what the Trustee seems to hang her hat on, ignoring that fact that here, only the Trustee and her professionals would benefit from any surplus from a sale. Moreover, and even more importantly, the Trustee's calculations are incomplete. Those calculations neglect the discretion vested in me pursuant to CCP §§ 872.140 and 873.820(b) and (d) to distribute any surplus from the sale after payment of

---

[2] The Trustee spoke to a real estate broker, Ron Bombiger, by phone on June 14, 2005, and June 17, 2005, about the value of the Debtor's residence. Trustee's Opposition to Debtor's Motion to Dismiss Chapter 7 Case for Cause Under 11 U.S.C. § 707(a) and Request For Hearing, Exhibit B, Page 13.

1  encumbrances, sales commissions, and other closing costs between the bankruptcy
2  estate and the Debtor's daughter's trust "in proportion to their shares as determined by
3  the court." CCP § 873.820(d). It does not comport with the evidence, common sense,
4  fairness, or equity (1) to have a trust for the benefit of a minor incur the cost of an
5  encumbrance for which the Debtor is solely liable personally (2) simply to provide
6  funds for payment of the Trustee's administrative costs in connection with what to my
7  analysis would have been an unnecessary forced sale. Based on CCP §§ 873.250(a)
8  and 873.820(b) and (d), this prejudice to the Debtor's daughter's interest, in my
9  evaluation of the evidence, would have to be corrected by a payment from the estate
10 of $47,000 to reimburse the daughter's trust for the forced payment of a mortgage
11 balance that otherwise was the sole personal responsibility of the Debtor. This
12 adjustment would leave the bankruptcy estate with a deficit and precludes
13 administration of the estate.
14      I conclude that on balance my order dismissing the Debtor's bankruptcy case
15 without payment of the fees of the Trustee and her counsel is supported by a
16 preponderance of the evidence. In addition, any recovery by the Trustee after a sale
17 would have benefitted only the Trustee and her professionals and would be contrary to
18 the provisions of § 330(a)(4) and to the principles enunciated in Mednet.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

## CONCLUSION

A review of the facts of the case, applicable statutes, and case law leads me to the conclusion that on the record in this matter, from the outset, there was no reason for the Trustee to sell the Debtor's residence. There was no equity for the estate in the Debtor's family residence for creditors of the Debtor's bankruptcy estate and therefore there was no estate to administer. The denial of fees and costs was not in error. The Trustee's motion for reconsideration is denied.

SO ORDERED.

DATED: February 7, 2006

_____
THOMAS B. DONOVAN
United States Bankruptcy Judge

NOTICE OF ENTRY OF JUDGMENT OR ORDER
AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1. You are hereby notified that a judgment or order entitled:

**MEMORANDUM OF DECISION**

was entered on 2/8/06.

2. I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on 2/8/06.

Office of the U. S. Trustee
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017

Debtor
Maren L. Carmona
3450 Olive Avenue
Long Beach, CA 90807

Debtor's Counsel
Charles Hicks, Jr.
Law Office of Charles Hicks, Jr.
3643 Charlemagne Avenue
Long Beach, CA 90808

Chapter 7 Trustee
Alberta P. Stahl
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012

Counsel for Chapter 7 Trustee
Douglas D. Kappler
Robinson, Diamant & Wolkowitz
1888 Century Park East, Suite 1500
Los Angeles, CA 90067

Dated: 2/8/06

_____
Clerk